### THE G. F. COOKE.

### THE MARTHA.

### THE M. B. FULLER.

### STANDARD TOWING CORPORATION v. PALMER et al.

### Civ. No. 17449.

District Court, E. D. New York.

Nov. 29, 1946.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for libellant.

Edward R. Brumley, of New York City (Robert M. Peet, of New York City, of counsel), for respondent.

GALSTON, District Judge.

On the evening of April 13, 1944, the tug Tourist with a tow of six barges in tandem fashion with two hawsers left Columbia Street, destined for the Erie Canal. Two of the tow were known as boxes and the other four as barges, the difference being that the former are wider than the latter. The tow was made up with the Agnes and the Marco, two boxes, as the head boats, with the Martha third, and the others following. The two hawsers to the tug were each about 100 feet in length. The barges were made fast to one another with lines at each corner to the boat behind, and cross lines.

This loaded tow left Columbia Street at about 6:30 p. m. with the aid of the tug Protector, which was along the port side of the Marco, the second barge. On rounding Governor's Island, the Tourist had trouble with her steering gear, and accordingly the Protector took over the tow, and the Tourist dropped back along the starboard side of the Marco. The tow had rounded the southerly end of Governor's Island, and after the Protector had taken the tow in hand, headed up the middle of the river. The tide was the last of the ebb. Visibility was unrestricted.

In the river, headed somewhat toward the Jersey shore, and about 1000 feet off from the Protector, was a flotilla consisting of a tug and a carfloat on each side. The Protector blew one whistle and kept on going until it was within 300 or 400 feet of the other flotilla. The one whistle signal was to indicate to the Transfer No. 10 that the Protector intended to overtake that tow on the latter's starboard hand. The captain then observed that the carfloat flotilla appeared to be drifting down the river in front of the Protector tug. Accordingly the Protector sounded an alarm and headed toward the New York shore. As the Protector got abreast of the car-

float tow, the Transfer No. 10, which had the two carfloats in tow, blew danger signals. But a collision resulted because the Transfer No. 10 kept falling back, in part due to the northwesterly wind blowing at about 25 miles to 35 miles an hour, and doubtless yielding too to the ebb tide which had not quite run out.

The starboard aft corner of the carfloat No. 60, which was on the Transfer No. 10's starboard side, collided with the third barge in the Protector's tow, with the result that the following barges, Martha, G. F. Cooke and M. B. Fuller, were dragged against the corner of the carfloat No. 60.

The fault seems clearly that of the Transfer No. 10. The flotilla had left Oak Point floatbridges bound for the floatbridges of the Central Railroad of New Jersey in Jersey City. The two tracks on carfloat No. 40 on the port side of Transfer No. 10, and carfloat No. 60 on the starboard side having three tracks, were fully occupied by railroad cars. The No. 10 arrived at a point 2000 feet off her destination some time before 9 p. m. Eastern War Time, and on announcing her arrival by three whistle blasts, the signal-tower ashore directed her by green and white lights to wait until berth space was available. The deck crew of the Transfer No. 10 comprised the captain, two deck-hands, and two float-men. At the time of the approach of the Protector and its tow, all of these men were in the galley with the exception of the captain. The testimony of the captain and the first deck-hand was far from convincing. The latter said that the Protector was pulling to port across the bow of the float No. 60, and in so doing a line caught in the starboard bridge hook of the No. 60. No one corroborates that testimony. The credibility of the captain of the Transfer No. 10, at least the accuracy of his statements, was put in severe issue both as to the time of the occurrence, the tides, and the fact that he professed to place the tow of the Protector's barges in two tiers of three barges each.

It is significant that the Transfer No. 10, with no other navigation in the vicinity to impede its progress, failed to go ahead during the time that the Protector tug was measurably behind. If there had been some lookout assisting on deck, the Protector float could have been seen in ample time to enable the captain of the No. 10 to go forward.

I find no fault on the part of the Protector, and accordingly the libellant is entitled to a decree in the usual form.

Concurrently with this opinion, appropriate findings of fact and conclusions of law will be filed.